TO BE PUBLISHED IN FEDERAL SUPPLEMENT 2D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 09-200 (WOB)

NICOLE HOWELL                                    PLAINTIFF

VS.                    OPINION AND ORDER

ROB SANDERS                                      DEFENDANT

Bertelsman, District Judge:

     This matter is before the court on defendant's motion to
dismiss or, in the alternative, motion for summary judgment (Doc.
7).  The court heard oral argument on this motion on June 2,
2010, after which it took the motion under advisement.  (Doc. 18)

     Having heard the parties, and having further reviewed this
matter, the court now issues the following Opinion and Order.

### *Introduction*

     As explained in the following opinion, this court believes
that well-settled principles of law require the court to conclude
that the defendant prosecutor in this case is entitled to
absolute and qualified immunity.  Therefore, the case must be
dismissed.

     This conclusion in no way second-guesses the verdict of the
jury in the state criminal trial.  A jury may convict only upon
proof beyond a reasonable doubt.  A prosecutor may prosecute on a

showing of "probable cause."  Proof beyond a reasonable doubt is the heaviest burden of proof in our judicial system; a showing of probable cause is the lightest.[1]  Further, a prosecutor is absolutely immune for actions performed in the judicial phase of the prosecution.

If a prosecutor were not civilly immune for seeking an indictment, few indictments would be sought.  If he or she were liable every time there is an acquittal or a prosecution is dropped, few prosecutions would be initiated.  If every prospective defendant who denied his or her guilt could not be investigated or prosecuted, 95% or more of the 3000 convictions – both pleas and trials -- presided over by the undersigned in the last thirty years would have never been obtained.

According to the record in this case, once the complaining student came forward, he was consistent in his preliminary statements and trial testimony in that he stated throughout that he had voluntary sexual relations with the teacher.  The record reflects no motive for fabricating this charge.  These facts alone constituted "a reasonable ground for belief" in the

---

[1]Probable cause "is a reasonable ground for belief." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citation omitted). By contrast: "Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives." *Sixth Circuit Criminal Pattern Jury Instructions* 1.03(5) (2009). The usual examples of such decisions given to a jury are to get married, get divorced, or have brain surgery.

teacher's guilt, that is, probable cause.[2]

The fact that his testimony had some inconsistencies or that the defendant denied her guilt did not negate probable cause. The fact that the jury was not convinced of her guilt beyond a reasonable doubt is not inconsistent with the existence of probable cause. Further, on the record before this court, the defendant prosecutor is entitled to absolute immunity for the reasons explained below.

### *Factual and Procedural Background*

Plaintiff Nicole Howell was hired on May 12, 2008, as a teacher and assistant cheerleading coach at Dayton High School in Dayton, Kentucky. In early December 2008, plaintiff learned that a rumor was going around school that she had engaged in sexual activity with a sixteen year-old male student ("the student"). (Compl. ¶ 12)

On December 8, 2008, plaintiff informed the principal of this rumor and told him that it was not true. The principal met with the student several days later, at which time the student denied the rumor and denied that he had ever had sex with plaintiff. (*Id.* ¶ 15) The principal informed plaintiff that she was cleared.

On December 15, 2008, however, the student told the principal that he did, in fact, have sex with plaintiff. (*Id.* ¶

---

[2]*See* note 1.

3

16)   The Dayton Independent Board of Education then turned the matter over to the police.

Detective Bryan Frodge of the Covington Police Department began an investigation into the matter.[3]  Frodge attended an interview of the student conducted by an employee of the Northern Kentucky Children's Advocacy Center on December 16, 2008.  (Doc. 12-13)  The student stated in this interview that he had had sexual intercourse with plaintiff at her apartment several times. He described the inside of plaintiff's apartment as well as certain tattoos on her body.

On December 24, 2008, Detective Frodge interviewed plaintiff in the presence of her attorney, Patrick Moeves.  Frodge's case activity log states that plaintiff admitted to several cell phone conversations and text messages with the student which had sexual overtones.  (Doc. 12-14)

With plaintiff's consent and in the presence of her attorney, Detective Frodge photographed plaintiff's residence and tattoos on her body on January 8, 2009.  Frodge asked Moeves if plaintiff was interested in taking a polygraph test, and Moeves said they were not sure.  (Doc. 12-14)

On January 8, 2009, Frodge also met with Stephanie Kastner of the Kenton County Commonwealth Attorney's office to advise her

---

[3]The Covington police assumed responsibility for the investigation because the student alleged that the sexual encounters had taken place at plaintiff's apartment in Covington.

of the evidence he had collected.  That same day, Frodge drafted
a Complaint and Affidavit in which he recounted the details of
the interview of the student and the student's statements that he
had had sex with plaintiff.  (Doc. 11-15)  The Affidavit stated
that the student had described plaintiff's apartment and tattoos,
and that his descriptions matched the photographs taken by
Frodge.  It also stated that plaintiff had admitted to having
cell phone conversations with the student that had sexual
overtones and "that she may have used poor judgment."  (*Id.*)

Frodge emailed his draft of the Complaint and Affidavit to
Kastner, who made "minor changes" and sent it back to him.  (Doc.
12-14)

That same day, Frodge presented the Complaint and Affidavit
to Kenton District Judge Kenneth Easterling.  Based on the
Complaint and Affidavit, Judge Easterling issued a warrant for
plaintiff's arrest for the criminal offense of Sexual Abuse First
Degree, a Class D Felony.  (Doc. #11-16)  The warrant is dated
January 9, 2009.

Plaintiff then called plaintiff's attorney, Moeves, to
advise him of the warrant.  Moeves asked Frodge if the offer for
plaintiff to take a polygraph test was still open, and Frodge
said that it was.  After Frodge conferred with Kastner, he told
Moeves that they would defer executing the warrant until
plaintiff could take a polygraph test, which was then scheduled

5

for January 13, 2009.  Plaintiff had previously passed a private
polygraph test arranged by her attorney.  (Doc. #11-1, ¶ 8)
Plaintiff alleges that Frodge told Moeves that if plaintiff
passed the polygraph test, the matter "would go away."  (Compl. ¶
33)

Ultimately, no polygraph test was administered.  When
plaintiff appeared with her attorney to take the polygraph on
January 13, 2009, Frodge told Moeves that defendant Sanders told
Frodge to arrest plaintiff and that no polygraph test would be
given.  (Doc. 11-1, ¶ 11)  Moeves then spoke personally to
Sanders, who stated that "he didn't care whether or not
[plaintiff] passed a polygraph even if given by the Covington
Police department and that he wanted her arrested."  (*Id.* ¶ 12)

Detective Frodge then executed the arrest warrant and
plaintiff was booked into the Kenton County jail.  (Doc. 11-16)

On January 20, 2009, a preliminary hearing was held, at
which plaintiff was represented by counsel, and the case was
bound over to the grand jury.  (Doc. 12-19)  The grand jury
returned an indictment against plaintiff on March 19, 2009.
(Doc. 12-18)

The case was tried to a jury on October 13-16, 2009, at
which time the jury returned a verdict of not guilty.  (Compl. ¶
102)

Plaintiff filed this action on November 25, 2009, alleging

6

claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, and violation of due process. (Doc. 1) She also alleges state law claims for malicious prosecution and intentional infliction of emotional distress.

On February 9, 2010, defendant filed the present motion to dismiss or, in the alternative, for summary judgment. (Doc. 7) The matter was fully briefed, and the court issued an order on April 29, 2010, setting the matter for oral argument and informing the parties that the court would treat the motion as one for summary judgment. (Doc. 16) Thereafter, the parties made no further motions or filings.

### *Analysis*

#### A.   **Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "The party moving for summary judgment bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Havensure, L.L.C. v. Prudential Ins. Co. of Am.*, 595 F.3d 312, 315 (6th Cir. 2010) (citation omitted). "Once the moving party has satisfied its burden, the nonmoving party may not rest upon its mere allegations or denials of the opposing party's

pleadings, but rather it must set forth specific facts showing
that there is a genuine issue for trial." *Id.* *See generally
Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989).

Affidavits "must be made on personal knowledge, set out
facts that would be admissible in evidence, and show that the
affiant is competent to testify on the matters stated." Fed. R.
Civ. P. 56(e)(1).  Here, plaintiff improperly relies on certain
allegations of the complaint.  However, these allegations do not
meet the standards of the rule, even though the complaint is
verified.

A genuine issue of material fact exists if there is
sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party.  *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986).  The mere existence of a
scintilla of evidence in support of the nonmoving party's
position is insufficient to require a trial.  *Id.* at 252.  In
determining whether a genuine issue of material fact exists, this
court draws all inferences in the light most favorable to the
nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio
Corp.*, 475 U.S. 574, 587 (1986).

8

B.    **Federal Law Claims**

    1.    **Absolute Immunity**

Whether a prosecutor is entitled to absolute immunity in a particular case is sometimes obvious and sometimes a matter of some difficulty.  In this case, a careful review of the precedents is required.

The Supreme Court addressed whether prosecutors should be afforded some type of immunity in actions brought under 42 U.S.C. § 1983 in *Imbler v. Pachtman,* 424 U.S. 409 (1976).  Noting that a prosecutor had been afforded absolute immunity at common law for most of his functions, the Court held that such immunity should apply in § 1983 cases.  The Court's reasoning was that the prosecutor's being subject to suit by every acquitted defendant was bound to unduly dampen the discretion needed to bring and pursue prosecution.  *Id.* at 423.  In language particularly applicable here, the Court observed:

> A prosecutor often must decide, especially in cases of wide public interest, whether to proceed to trial where there is a sharp conflict in the evidence.  The appropriate course of action in such a case may well be to permit a jury to resolve the conflict.  Yet, a prosecutor understandably would be reluctant to go froward with a close case where an acquittal likely would trigger a suit against him for damages.

*Id.* at 426 n. 24.

The Court reserved on the issue of whether a prosecutor should receive only qualified immunity when acting "in the role of an administrator or investigative officer" and went on to

9

state: "We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id.* at 430-31.

*Burns v. Reed,* 500 U.S. 478 (1991), involved the issue of immunity for a prosecutor's giving legal advice to the police and for appearing at a probable cause hearing.  In a somewhat unusual fact situation, the plaintiff was suspected of having murdered her children.  *Id.* at 481-82.  She claimed they were murdered by an intruder while they slept.  Suspecting that she had dual personalities, the police wished to interrogate her while she was under hypnosis.  *Id.* at 482.  Concerned about the legality of that technique, they sought advice from the defendant prosecutor who approved the procedure.  The prosecutor, accompanied by one of the police officers, then went before a judge to seek a search warrant based on the statements plaintiff had made while under hypnosis.  The prosecutor presented the police officer's testimony that the plaintiff had confessed, but they did not inform the judge that this "confession" had occurred under hypnosis or that she had otherwise consistently denied shooting her sons.  *Id.*  On being subsequently exonerated, the plaintiff brought a § 1983 suit against the prosecutor, who then claimed absolute immunity for all of the above activities.

The Court concluded that the prosecutor had absolute immunity for his appearance in the state court, even though the

10

evidence presented there was less than frank or complete. *Id.* at
491-92.  The Court held that the prosecutor's actions in
appearing in the courtroom and presenting evidence in support of
a motion for a search warrant were "intimately associated with
the judicial phase of the criminal process" and "also connected
with the initiation and conduct of a prosecution." *Id.* at 492
(citations omitted).  Citing *Imbler*, the Court also recognized
that "the duties of the prosecutor in his role as advocate for
the State involve actions preliminary to the initiation of a
prosecution and actions apart from the courtroom." *Id.* at 486.

   The Court went on to hold, however, that the prosecutor's
giving advice to the police at the investigative stage was
entitled only to qualified immunity, stating: "Indeed, it is
incongruous to allow prosecutors to be absolutely immune from
liability for giving advice to the police, but to allow police
officers only qualified immunity for following the advice." *Id.*
at 495 (citation omitted).

   Although the Court's language was very broad, it should be
noted that the advice given to the police in *Burns* was given
before probable cause existed. *Id.* at 482.

   In *Buckley v. Fitzsimmons,* 509 U.S. 259 (1993), the
defendant prosecutor was alleged to have "shopped around" for a
friendly expert in order to connect the plaintiff with a
bootprint during the preliminary investigation of a crime. *Id.*

11

at 262-63.  Further, following the ensuing indictment, the prosecutor held a press conference in which he slandered the plaintiff in order to gain votes in an upcoming election.  *Id.* Absolute immunity was denied in both claims but for different reasons.

In the first claim of fabricating evidence the Court stated: "The question, then is whether the prosecutors have carried their burden of establishing that they were *functioning* as 'advocates'" when investigating the source of the bootprint.  *Id.* at 274 (emphasis added).  The answer was provided by the fact that the prosecutors did not have "probable cause to arrest petitioner or to initiate judicial proceedings during that period.  Their mission at that time was entirely investigative in character.  A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.* at 274.  This rationale has been denominated the "functional approach" in subsequent cases.

The Court noted that this did not necessarily mean that the prosecutor was absolutely immune for "police investigative work" performed even after probable cause existed.  *Id.* at 274 n.5.[4]

The next Supreme Court case is *Kalina v. Fletcher,* 522 U.S. 118 (1997).  There, the prosecutor initiated a prosecution by

---

[4]The Court also found there was no absolute immunity for press conferences even though associated with the returning of an indictment.  *Id.* at 277-78.

filing an unsworn information and a motion for an arrest warrant. *Id.* at 120-21. To satisfy the applicable state law requirement that an arrest warrant be supported by sworn testimony, the prosecutor herself also certified under penalty of perjury to the existence of probable cause and vouched for the truth of the facts in the certification. *Id.* at 121.

The Court held that the prosecutor's preparation and filing of the information and motion for a search warrant were clearly protected by absolute immunity under the teachings of the cases cited herein. *Id.* at 129. The Court further held, however, that the prosecutor stepped out of her function as an advocate in personally attesting to the certification for the arrest warrant:

> These cases make it quite clear that petitioner's activities in connection with the preparation and filing of two of the three charging documents – the information and motion for an arrest warrant – are protected by absolute immunity. Indeed, except for her act in personally attesting to the truth of the averments in the certification, it seems equally clear that the preparation and filing of this third document in the package was part of the advocate's function as well.

*Id.* As to the certification, the Court held that the prosecutor merely "performed an act that any competent witness might have performed" and thus was not entitled to absolute immunity. *Id.* at 129-30.

In *Van de Kamp v. Goldstein,* 129 S. Ct. 855 (2009), the Court held that prosecutors had absolute immunity against charges of failing to turn over to the defense exculpatory and

13

impeachment material at trial and failing to adequately train their staffs in their constitutional duties in regard to these matters. *Id.* at 862-63. The Court further held that several types of administrative activities that were related to trial preparation were entitled to absolute immunity. *Id.* at 864.

Synthesizing the teachings of these Supreme Court cases yields the following principles:

1. The prosecutor is absolutely immune when acting as an advocate. *Imbler*, 424 U.S. at 430-31; *Burns*, 500 U.S. at 491; *Buckley*, 509 U.S. at 273-74; *Kalina*, 522 U.S. at 125. *Accord Vakilian v. Shaw*, 302 Fed. App'x 350, 357-58 (6th Cir. 2008); *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000); *Prince v. Hicks*, 198 F.3d 607, 611 (6th Cir. 1999); *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997).

2. Investigatory actions taken before the existence of probable cause are not entitled to absolute immunity. Even after the existence of probable cause, some actions may not be protected if unrelated to the advocacy role. *Buckley*, 509 U.S. at 274 n. 5.

3. Thus, preparation of indictments, informations, and applications for search and arrest warrants to be presented to a court are subject to absolute immunity. *Kalina*, 522 U.S. at 129. Personally swearing to the truth of facts stated in the course of such applications is not. *Id.* at 129-30.

14

4.  Most importantly for this case, deciding to initiate a prosecution is subject to absolute immunity.  *Imbler*, 424 U.S. at 431; *Buckley*, 509 U.S. at 273; *Prince*, 198 F.3d at 614; *Higgason v. Stephens*, 288 F.3d 868, (6th Cir. 2002) (prosecutor's motives and lack of evidence immaterial).

5.  A prosecutor will not be entitled to absolute immunity for giving advice to the police during the investigative phase of a case, but such immunity may protect giving legal advice if closely related to the advocacy phase.  *Burns v. Reed*, 500 U.S. 478, 492-96 (1991).

The defendant relies heavily on the decision of the Sixth Circuit in *Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1997)*,* and the court agrees that it is controlling here.

There, the appellate court described the prosecutor's role in that case as follows:

> Thompson, as the elected Prosecuting Attorney for the County, received informal reports on the status of the Carlin investigation, attended various staff meetings, concurred in the recommendations of his subordinates that charges should be filed against Ireland, reduced the number of specific counts charged against Ireland, and ultimately concurred in the decision to seek a warrant for Ireland's arrest. . . .  Tunis, one of two attorneys directly overseeing the investigation, reviewed documents and transcripts of witness interviews, met with investigators, conducted legal research, drafted and periodically updated the criminal complaint and arrest warrant, signed and authorized the complaint, and presented the materials to Judge Kuhn.

*Id.* at 1444.

15

This description tracks exactly the activities of the
defendant and his staff here.

The record reflects no activity in this case by the
defendant himself, until he decided to order that the arrest
warrant be executed and to proceed with the prosecution without
giving plaintiff the opportunity to take a polygraph test.  It is
important to note that, at this point, the detective had already
appeared in the state court and obtained the arrest warrant.  The
immediately ensuing steps were arraignment, preliminary hearing,
presentation to the grand jury and trial.

The plaintiff seizes on language in some of the cases that
"giving advice to the police" is not protected by absolute
immunity, but this language is taken out of context.[5]  It is
specifically stated in *Ireland* that the defendant there, who was
held to be absolutely immune, "concurred in the decision to seek
a warrant for Ireland's arrest" and "concurred in the
recommendations of his subordinates that charges should be filed"
against the plaintiff.  *Ireland*, 113 F.3d at 1444.

There is no showing here that the defendant advised the
police that probable cause existed.  Rather, the record indicates
that this decision was made by the detective, who swore to such

---

[5]In *Prince v. Hicks*, 198 F.3d 607, 613-15 (6th Cir. 1999),
the defendant advised the police that probable cause existed at
the outset of the proceedings, before probable cause actually
existed, and without seeking the opinion of the officer.

16

an opinion in the application for the arrest warrant, although an assistant prosecutor reviewed and made minor changes to the affidavit.

Indeed, as discussed in the next section of this opinion, the existence of probable cause was obvious from the time of the first statement made by the complaining student in the detective's presence.

## 2.   Qualified Immunity

The court also holds in the alternative that the defendant is entitled to qualified immunity for all of the actions complained of.  An official is entitled to qualified immunity unless, considering all the facts and circumstances, it is apparent to him that his actions violate the plaintiff's constitutional rights.  *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986); *Miller v. Sanilac County*, – F.3d –, No. 09-1340, 2010 WL 2221026, at *3 (6th Cir. June 4, 2010); *Binay v. Bettendorf*, 601 F.3d 640, 646-47 (6th Cir. 2010).

Specifically, the plaintiff here, on whom the burden of defeating qualified immunity rests, must show that her arrest and prosecution were implemented without probable cause.  Even assuming that defendant could be charged with all the actions of his staff and the detective in this case, the plaintiff has not met this burden.

Probable cause determinations, even if wrong, "are not

17

actionable as long as such determinations pass the test of reasonableness." *Ireland v. Tunis*, 113 F.3d 1435, 1449 (6th Cir. 1997) (citation omitted).  Thus, the proper inquiry is whether a reasonably competent official armed with the same knowledge possessed by the defendant official could have acted as the defendant did.  *Id.*  Where probable cause is the issue, qualified immunity exists even if "reasonable officers could disagree as to whether there was sufficient probable cause" to take the action complained of.  *Id.*

Probable cause may exist, even though there is exculpatory or inconsistent evidence, although such factors are entitled to consideration.  *Miller*, 2010 WL 2221026, at *5; *Everson v. Leis*, 556 F.3d 484, 498 (6th Cir. 2009).  The arresting officer's or prosecutor's motives are irrelevant.  *See McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 517 (6th Cir. 2001) (citation omitted).

Here, although there were some inconsistencies in the statement of the complaining student, he was consistent on the main points that he and the plaintiff teacher had sexual intercourse or other intimate contact in her apartment on several occasions.  Although the teacher denied that such events occurred, mere denials of one under suspicion or prosecution cannot invalidate convincing evidence of probable cause.  If that were so, there could be virtually no prosecutions.  In the

18

approximately 3000 federal criminal prosecutions over which the undersigned has presided, it was a rare defendant who did not deny his guilt at the early stages of the investigation, or even at trial.  Such denial did not require the court to enter a judgment of acquittal.  Rather, the issue was left to the jury. Even when faced with finding guilt beyond a reasonable doubt, a jury need not reject inconsistent testimony or accept the truth of contradictory evidence.[6]

Qualified immunity is a matter of law for the court. *Everson*, 556 F.3d at 494 (citations omitted).  The court thus finds as a matter of law not only that there was qualified

---

[6]*See Sixth Circuit Criminal Pattern Jury Instructions* 1.07(2)(F), (G) (2009).  These instructions state:

(F)  Ask yourself if the witness testified inconsistently while on the witness stand, of if the witness said or did something (or failed to say or do something) at any other time that is inconsistent with what the witness said while testifying.  If you believe that the witness was inconsistent, ask yourself if this makes the witness's testimony less believable.  Sometimes it may; other times it may not.  Consider whether the inconsistency was about something important, or about some unimportant detail.  Ask yourself if it seemed like an innocent mistake, or if it seemed deliberate.

(G) And ask yourself how believable the witness's testimony was in light of all the other evidence.  Was the witness's testimony supported or contradicted by other evidence that you found believable?  If you believe that a witness's testimony was contradicted by other evidence, remember that people sometimes forget things, and that even two honest people who witness the same event may not describe it exactly the same way.

immunity, but that probable cause existed from the time the complaining student first gave an interview in the presence of the investigating police officer.[7]

### 3.   Plaintiff's Oral Motion for Discovery

As noted above in the procedural background of this case, when the court set defendant's motion for oral argument, it informed the parties that the motion would be treated as one for summary judgment.  (Doc. 16)  Plaintiff thereafter made no motion or other request for discovery.

At the outset of oral argument, the court recounted this fact and inquired of counsel as to whether both parties were satisfied with the record:

> THE COURT:    Now, this motion was filed, along with considerable exhibits filed in one form or another, and is to denominate either a motion to dismiss or, in the alternative, for summary judgment.  At least a month ago when I set this for a hearing, I said I would proceed as if it were summary judgment, or elected to proceed [as if] it was a summary judgment.  Nobody made any motions to take any depositions or made any move to file any additional affidavits.
>
> In reading everything over, it seems that the material facts are probably not in dispute, but I want to be sure that we're all comfortable with this record.  In other words, I'm not going to rule on it from the bench so you can relax.  However I rule, somebody's going to appeal, so I have to write something so the Court of Appeals can see where it came from, what facts I thought were important.  **So is everybody satisfied with the record we have?**

_____

[7]The plaintiff argues that the dates in the proof varied from the dates in the indictment.  However this neither invalidates the indictment or retroactively shows a lack of probable cause.

        MR. DETERS:      Yes, Your Honor.

        THE COURT:       That's all we need?

        MR. DETERS:      Yes, Your Honor.

        MR. NITARDY:     Yes, Your Honor.

(Transcript of Oral Argument held June 2, 2010) (emphasis added)[8]

        At the conclusion of oral arguments, however, plaintiff's counsel made an oral motion to take the depositions of four witnesses.  The court denied that motion, citing the above procedural history, as well as the Sixth Circuit's ruling in *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009).

        In *Everson*, the Sixth Circuit held that the trial court erred in granting a Rule 56(f) motion by plaintiff in a § 1983 case in which defendants had moved for summary judgment on the grounds of qualified immunity.  *Id.*  Notwithstanding the fact that plaintiff's prior counsel had failed woefully in developing any record, the court nonetheless held that a district court may not defer ruling on questions of immunity where such defense is raised, even if discovery is not complete, because to do so would defeat the primary purpose of immunity – to save officials from unwarranted discovery.  *Id.* at 490-91.

        Here, plaintiff's last-minute request to take depositions falls even shorter of Rule 56(f)'s requirements then did the

---

        [8]At this time, the official transcript has not been filed of record, but a rough copy was provided to the court.

written motion in *Everson*.  Allowing such discovery would thus have run afoul of that authority.

**C.   <u>State Law Claims</u>**

In addition to her federal claims, plaintiff also alleges two claims under Kentucky law: malicious prosecution and intentional infliction of emotional distress.  (Compl. ¶¶ 124-125, 134-136)  The court finds that no triable issue exists as to either claim.  Further, Kentucky follows the federal law discussed above in addressing prosecutorial immunities.  *See Jefferson County Commonwealth Attorney's Office v. Kaplan*, 65 S.W.3d 916, 920 (Ky. 2001) (citing *McCollum v. Garrett*, 880 S.W.2d 530 (Ky. 1994)).

It is well established in Kentucky that a necessary element to the claim of malicious prosecution is that the defendant lacked probable cause for the proceedings in question.  *See D'Angelo v. Mussler*, 290 S.W.3d 75, 79 (Ky. App. 2009) (citations omitted); *Collins v. Williams*, 10 S.W.3d 493, 496 (Ky. App. 1999).

Here, the state judicial officers who presided over the case against plaintiff found that probable cause existed at multiple key junctures, denying plaintiff's motions for a directed verdict and ultimately concluding that there was sufficient evidence to submit the matter to the jury.  This court also has concluded, in its qualified immunity analysis above, that probable cause

22

existed for defendant's prosecution of plaintiff.  Plaintiff's claim for malicious prosecution thus fails a matter of law.

Plaintiff's claim for intentional infliction of emotional distress likewise fails because the record lacks any evidence that defendant acted with the intent of causing plaintiff emotional distress.  *See generally Morgan v. Bird*, 289 S.W.3d 222, 228 (Ky. App. 2009) (discussing elements of this cause of action).

Plaintiff's allegation that defendant acted with a political motive, even if true, is not personal to her and does not show that he proceeded with the intent essential to this tort.

Additionally, under Kentucky law, when damages for emotional distress are available through another state tort claim, and the conduct was not intended only to cause extreme emotional distress, a claim for the tort of intentional infliction of emotional distress will not lie.  *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993).  Damages for emotional harm being available in an action for malicious prosecution, plaintiff may not maintain a separate cause of action for intentional infliction of emotional distress.  *See, e.g., Childers v. Geile*, No. 2008-CA-002114-MR, 2009 WL 3672891, at *4 (Ky. App. Nov. 6, 2009) (trial court properly dismissed outrage claim where defendants' alleged conduct amounted to medical malpractice, even though plaintiffs had voluntarily

23

dismissed that claim).


    Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

    **IT IS ORDERED** that: (1) Defendant's motion to dismiss or, in the alternative, for summary judgment (Doc. #7) be, and is hereby, **GRANTED.** A separate judgment shall enter concurrently herewith.


    This 17th day of June, 2010.




**Signed By:**

**_William O. Bertelsman_** WOB

**United States District Judge**

24